**O**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| FRANCISCO HERNANDEZ GAVILANES, | § | |
| | § | |
| Petitioner | § | |
| VS. | § | CIVIL ACTION NO. 5-10-66 |
| | § | CRIMINAL ACTION NO. 5:09-2262-3 |
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Francisco Hernandez Gavilanes' (Gavilanes) Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. [Dkt. No. 1].[1] After careful consideration of the motion, the record, and governing law, Gavilanes' motion is **DISMISSED**.

### I.   BACKGROUND AND PROCEDURAL HISTORY

On September 29, 2009, Gavilanes was charged by a grand jury in Laredo, TX in a two-count indictment alleging that on or about September 11, 2009 Gavilanes:

[1]   did knowingly and intentionally conspire and agree with other persons known and unknown to the Grand Jurors to possess with intent to distribute a . . . quantity in excess of 100 kilograms of marijuana, a Schedule I controlled substance.

[2]   did knowingly and intentionally possess with intent to distribute a . . . quantity in excess of 100 kilograms of marijuana, a Schedule I controlled substance.

[Cr. Dkt. No. 39]. On November 19, 2009, Gavilanes appeared before Magistrate Judge Hacker

---

[1] "Dkt. No." refers to the docket number entry for the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing. "Dkt. No." will be used to refer to filings in case number 5:10-cv-66. "Cr. Dkt. No." will be used to refer to filings in criminal case number 5:09-cr-2262-03.

for re-arraignment and to plead guilty to Count One of the indictment. [Minute Entry for 11/19/2009; Digital Recording of November 19, 2009, Re-Arraignment ("R. Rec.") at 3:44 p.m.]. During the re-arraignment, the Court placed Gavilanes under oath and advised him of the rights and implications surrounding a guilty plea, consistent with the requirements of Federal Rule of Criminal Procedure 11. [R. Rec. at 3:49 p.m.]; *see* FED. R. CRIM. P. 11(b). Specifically, the Court focused a portion of this explanation on Gavilanes' interaction with his attorney:

> Judge Hacker: Alright, the first question that I am going to ask you if you've had enough time to discuss your case with your attorney and get the questions you need answered so that you feel comfortable going forward with a guilty plea today. Mr. Hernandez Gavilanes, have you had enough time to discuss your case with Mr. Tellez?
>
> Gavilanes: Yes, sir.
>
> Judge Hacker: And are you satisfied with his legal representation?
>
> Gavilanes: Yes, sir.

[R. Rec. at 3:49 p.m.] The court also reviewed with Gavilanes his waiver of the rights to appeal or to collaterally attack his sentence:

> Judge Hacker: Mr. Hernandez Gavilanes, it is my understanding you have a plea agreement in your case; are those your two signatures on the plea agreement in front of you?
>
> Gavilanes: Yes, sir.
>
> Judge Hacker: And you went through that plea agreement in detail with Mr. Tellez?
>
> Gavilanes: Yes, sir.
>
> Judge Hacker: To summarize your plea agreement: it states that you agree to plead guilty to Count I of your indictment. That you agree to give up your rights to appeal in your case; you're not going to ask the Fifth Circuit, the higher court, to review your conviction or sentence once the district judge imposes a sentence in this matter. It's also stating that you're agreeing to

|               |            |
|---------------|------------|
|               | give up any statutory rights you have to collaterally attack your conviction or sentence, once it becomes final, by filing motions with any court.  The government has agreed to dismiss the other counts against you in the indictment at the time of sentencing.  They're agreeing not to oppose a two level downward adjustment, should you accept responsibility as contemplated by the sentencing guidelines.  And the government is agreeing that, if your guideline offense level is 16 or higher, it will ask the court for an additional one level reduction for acceptance of responsibility.  Mr. Hernandez Gavilanes, is that what you understood your agreement to be with the government? |
| Gavilanes:    | Yes, sir.  |
| Judge Hacker: | Has anyone promised you anything outside of this plea agreement to get you to plead guilty today? |
| Gavilanes:    | No, sir.   |
| Judge Hacker: | And you understand that this plea agreement is only binding between you and the government, it's not binding on the district judge; the district judge can choose to follow these recommendations in the plea agreement or choose not to follow these recommendations at the time of sentencing, you understand? |
| Gavilanes:    | Yes, sir.  |
| Judge Hacker: | And, Mr. Hernandez, you are agreeing on your part to give up your rights to appeal, or any right you have to file any motions to try to attack your conviction or sentence once it becomes final.  Are you willing to give up those rights, sir? |
| Gavilanes:    | Pardon?    |
| Judge Hacker: | In your plea agreement you're giving up your right, you're agreeing to give up your appellate rights and any rights you have to try to attack the conviction or sentence later on with any court.  Are you willing to give up those rights, sir? |
| Gavilanes:    | Yes, sir.  |

[*Id.* at 3:51 p.m.].  Further, to ensure that Gavilanes' plea was voluntary, Judge Hacker also

asked, "are you pleading guilty today freely and voluntarily, that is, is this your decision to do so, Mr. Hernandez Gavilanes?" [*Id.* at 4:00 p.m.]. Gavilanes replied, "Yes, sir." [*Id.*]. To be sure that Gavilanes understood the potential consequences of a guilty plea, Judge Hacker repeated the following twice:

> Judge Hacker: Mr. Hernandez Gavilanes you're facing a mandatory minimum of 5 years in prison, a maximum of 40 years in prison, up to a 2 million dollar fine, a one hundred dollar special assessment, a minimum of four years of supervised release, and a maximum of five years of supervised release.
>
> …
>
> Judge Hacker: So, do you understand the maximum penalties you're facing, Mr. Hernandez Gavilanes?
>
> Gavilanes: Yes, sir.

[*Id.* at 4:00 p.m. *and* 4:03 p.m.] After all of the requirements of Rule 11 had been satisfied, the Court accepted Gavilanes' guilty plea. [*Id.* at 4:09 p.m.].

In addition to orally pleading guilty at the re-arraignment hearing, Gavilanes signed a written plea agreement. [Cr. Dkt. No. 86]. The plea agreement went into detail about the penalty that accompanied Gavilanes' guilty plea and the waiver of his right to collateral attack:

> 1. The defendant agrees to plead guilty to Count(s) **ONE (1)** of the Indictment. Count **ONE (1)** charges the defendant with <u>Conspiracy to Possess with Intent to Distribute In-Excess of 100 kilograms of marijuana</u>, in violation of Title 21, United States Code, §§846, 841(a)(1), and 841(b)(1)(B)…
>
> 2. The penalty for each violation of Title 21, United States Code, §§ 846, 841(a)(1), and 841(b)(1)(B) is a <u>term of imprisonment of not less than FIVE (5) years and not more than FORTY YEARS (40), a fine of not more than $2,000,000.00; a period of supervised release of at least 4 years</u>…
>
> …
>
> 7. Defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal a conviction and appeal the sentence imposed. The defendant agrees to waive the right to appeal the conviction, the sentence imposed or the manner in which the sentence was determined. Additionally, the defendant is

>aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.
>8. In agreeing to these waivers, defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction, not a promise, and **did not induce his/her guilty plea**, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive.
>9. The Defendant understands and agrees that each and all waivers contained in the agreement are made in exchange for the concessions made by the United States in this plea agreement.

[Cr. Dkt. No. 86 at 1-4]. (emphasis in original). Additionally, attached at the end of Gavilanes' plea agreement is an addendum/affidavit, signed by Gavilanes, asserting:

>I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

[Cr. Dkt. No. 87 at 2]. After Gavilanes entered his guilty plea, he was sentenced by this Court on March 10, 2010, to 37 months imprisonment for Count One of the indictment. [Minute Entry for 03/10/2010]; [Cr. Dkt. No. 152].

Gavilanes now challenges his conviction and imprisonment under § 2255. As grounds for relief, Gavilanes asserts that he received ineffective assistance of counsel in that his counsel "never told [Gavilanes] about any appeal", "rush [Gavilanes] through the Rule 11 Hearing" leaving Gavilanes uninformed about the sentence that he was facing, and did not argue to the Court that Gavilanes only played "a very minimal part in the conspiracy." [Dkt. No. 1 at 4, 10]. Gavilanes further asserts that as a deportable alien he is facing additional hardships by being imprisoned at an "Immigration Detention center" rather than at a minimum security facility.

## II.     DISCUSSION

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam) (citing *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981)).  Generally, § 2255 claims fall under four categories: (1) constitutional issues; (2) challenges to the district court's jurisdiction to impose the sentence; (3) challenges to the length of a sentence in excess of the statutory maximum; and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255 (2006); *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).  After conducting an initial examination of the petition, the Court must dismiss if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief."  28 U.S.C. § 2255, PROC. R. 4(b).

### *Ineffective Assistance of Counsel*

Because Gavilanes signed a waiver relinquishing his right to file a § 2255 motion as part of his plea agreement, the Court must dismiss Gavilanes' claims of ineffective assistance of counsel without reaching the merits.

It is well established that a defendant may waive his right to appeal or otherwise collaterally attack his conviction and sentence, so long as the waiver is both knowing and voluntary, and the waiver is tailored to apply to the circumstances of the defendant's case. *United States v. Sanchez Guerrero*, 546 F.3d 328, 335 (5th Cir. 2008) (citing *United States v. Palmer*, 456 F.3d 484, 488 (5th Cir.2006)); *see also United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005).  A district court may examine the validity of a waiver when a defendant files a motion to collaterally attack his conviction or sentence.  *See United States v. Boyd*, No. 3:06-cv-

1365-H, 2007 WL 900949, at *3 (N.D. Tex. Mar. 23, 2007); *United States v. Baty*, 980 F.2d 977, 979 (5th Cir. 1992) ("We think that a defendant's waiver of her right to appeal deserves and, indeed, requires the special attention of the district court."). A court must first determine whether the waiver was knowing and voluntary, and then evaluate whether the waiver "applies to the circumstances at hand, based upon the plain language of the agreement." *Bond*, 414 F.3d at 544. In limited circumstances, a defendant may plead around a waiver and claim ineffective assistance of counsel if he alleges that the waiver itself was tainted by counsel's ineffective assistance. *United States v. White*, 307 F.3d 336, 339 (5th Cir. 2002).

When determining whether a defendant's waiver is knowing and voluntary, the Fifth Circuit notes that Rule 11 admonishments provide "prophylactic protection for the constitutional rights involved in the entry of guilty pleas." *United States v. Gracia*, 983 F.2d 625, 627 (5th Cir. 1993). Moreover, the requirement that a waiver be knowing and voluntary does not require a court to ensure that the defendant's knowledge is perfect; rather, a court "must only ascertain whether the defendant has a realistic or reasonable understanding of his plea." *Boyd*, 2007 WL 900949, at *4 (citing *United States v. Ruiz*, 536 U.S. 622, 631 (2002); *Gracia*, 983 F.2d at 627-28). Confirmations of understanding under oath (such as testimony in court, plea agreements, or affidavits) are "given a strong presumption of verity." *United States v. Esquivel-Solis*, 334 Fed. Appx. 944, 946 (5th Cir. 2009) (unpublished).

At re-arraignment, the Court went over the terms of Gavilanes' waiver with him in detail through the course of the "prophylactic" Rule 11 admonitions. Also, Gavilanes' signed plea agreement further evidences his awareness of the terms of the agreement, and the volition with which he agreed to the terms. Most telling is the affidavit attached to Gavilanes' plea agreement in which he states "I understand this agreement and I voluntarily agree to its terms." [Cr. Dkt.

No. 87 at 2]. Given the multiple assertions by Gavilanes under oath, the Court finds that Gavilanes has a realistic and reasonable understanding of his plea, and thus Gavilanes' waiver is valid and enforceable. As Gavilanes has not offered any evidence into the record that "the waiver itself was tainted by counsel's ineffective assistance", Gavilanes is not able to "plead around" the effectiveness of his waiver under *White*.

If the Court were to hold that Gavilanes could still appeal or collaterally attack his sentence even after unequivocally waiving his right to do so, the plea agreement process would be rendered impotent and Rule 11 would be stripped of its purpose. As Gavilanes has partaken of the benefits of his plea agreement by taking advantage of the concessions made by the government, he must likewise bear its burden. Under the explicit terms of his plea agreement, Gavilanes may not file a motion collaterally attacking his sentence under § 2255. Thus, the Court must dismiss the claims of ineffective assistance of counsel laid out in Gavilanes' § 2255 petition without reaching the merits.

### *Treatment of Deportable Aliens*

In addition to his claims of ineffective assistance of counsel, Gavilanes seeks a downward departure because his status as a deportable alien makes him ineligible for a drug abuse program that could potentially shorten his sentence, and bars him from serving his sentence in a minimum security facility that is close to his family. [Dkt. No. 1-2 at 6]. To the extent that Gavilanes is taking issue with this Court's application of the sentencing guidelines, such a claim is not cognizable in a § 2255 motion. See *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).

Gavilanes' argument that a deportable alien serves his sentence under egregious circumstances, as compared to an incarcerated citizen of the United States, is an argument based

on the execution of a sentence, and is therefore only proper under 28 U.S.C. § 2241. *Carvajal v. Tombone*, 31 Fed. Appx. 155, at *1 (5th Cir. 2001) (unpublished opinion) (citing *United States v. Cleto*, 956 F.2d 83, 84 (5th Cir. 1992)). To construe such a claim as a § 2255 motion is reversible error. *See Carvajal*, 31 Fed. App'x 155, at *1. Motions under 28 U.S.C. § 2241 must normally be brought in the place of the petitioner's confinement, which in this case is Eden, Texas, in the jurisdiction of the United States District Court for the Northern District of Texas. Therefore, this Court lacks statutory jurisdiction to hear the claim.

When a court lacks jurisdiction, 28 U.S.C. § 1631 states that the court "shall, if it is in the interest of justice, transfer such action" to the proper court. However, the Fifth Circuit has held that it is not in the interest of justice to transfer a meritless claim that will consume judicial time and energy. *Chandler v. Commander, Army Fin. & Accounting Ctr.*, 863 F.2d 13, 15 (5th Cir. 1989); *see also Haugh v. Booker*, 210 F.3d 1147, 1150 (10th Cir. 2000) (holding that "a court is authorized to consider the consequences of a transfer by taking 'a peek at the merits' to avoid raising false hopes and wasting judicial resources that would result from transferring a case which is clearly doomed") (citation omitted); *Wigglesworth v. I.N.S.*, 319 F.3d 951, 959 (7th Cir. 2003) (reasoning that a court has implicit authority under § 1631 to "take a peek" at the merits when deciding whether to transfer or dismiss). The Court will therefore "take a peek" at the merits to determine whether transfer would serve the interest of justice.

A "peek" at Gavilanes' claims reveals their lack of merit. Gavilanes alleges that because he is a deportable alien he is being treated differently from incarcerated United States citizens. Because alienage is not a suspect classification for purposes of federal government action, Gavilanes must show that there is no rational basis for treating him differently from similarly situated United States citizens. *Carvajal*, 31 Fed. Appx. 155, at *1 (citing *Rublee v. Fleming*,

160 F.3d 213, 217 (5th Cir. 1998). Gavilanes has not alleged that denying deportable aliens either drug treatment programs or a chance to serve time in a minimum security facility lacks a rational basis. Even if Gavilanes had made such an allegation, the Fifth Circuit has explicitly held that the Bureau of Prisons' determination that deportable aliens are ineligible to participate in drug abuse programs or to serve their time in a minimum security facility is rationally related to the increased flight risk that deportable aliens pose. See *Id.*; see also *Wottlin v. Fleming*, 136 F.3d 1032, 1037 (5th Cir. 1998) (applying rational basis review of equal protection claim to have right to early release). Moreover, there is no constitutional right to be released before the expiration of a valid sentence. *Wottlin*, 136 F.3d at 1037. Thus, the Bureau of Prison's exclusion of deportable aliens such as Gavilanes from drug treatment programs and minimum security prisons is constitutional. Because Gavilanes' claim under 28 U.S.C. § 2241 lacks merit, the Court will not transfer this claim, but will dismiss it. *See* § 1631; *Haugh*, 210 F.3d at 1150.

### III. CONCLUSION

Based on the foregoing, Gavilanes' Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 is **DISMISSED**. Additionally, should Gavilanes seek one, a certificate of appealability is **DENIED**.

IT IS SO ORDERED.

Done this 4th day of January, 2011, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE